UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
                                                             :
In re                                                        :    Chapter 11
                                                             :
Adelphia Communications Corporation, et al.,                 :    Case No. 02 41729 (REG)
                                                             :
                                    Debtors.                 :    06 Civ. 1445 (SAS)
                                                             :
------------------------------------------------------------ x

**DEBTORS' REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE ARAHOVA NOTEHOLDERS' APPEALS OF THE BANKRUPTCY COURT'S ORDER (I) DENYING MOTION TO TERMINATE THE EXCLUSIVE PERIODS DURING WHICH THE ARAHOVA DEBTORS MAY FILE A CHAPTER 11 PLAN AND DISCLOSURE STATEMENT AND SOLICIT ACCEPTANCES THERETO AND (II) GRANTING MOTIONS TO (A) REQUIRE THE DEBTORS TO REMAIN NEUTRAL IN INTERDEBTOR DISPUTES AND (B) DISQUALIFY WILLKIE FARR & GALLAGHER LLP FROM REPRESENTING THE DEBTORS IN <u>INTERCREDITOR DISPUTES</u>**

Adelphia Communications Corporation and its affiliated debtors, by and through their attorneys, Willkie Farr & Gallagher LLP, submit this reply memorandum of law in support of their motion to dismiss the appeals of the Ad Hoc Committee of Arahova Noteholders from the order of the United States Bankruptcy Court for the Southern District of New York, dated January 26, 2006,[1]

(I) denying the Arahova Noteholders Committee's motion to terminate the exclusive period during which the Arahova Communications, Inc. and its subsidiary debtors (the "Arahova Debtors" may file a Chapter 11 plan and disclosure statement and solicit acceptances thereto; and

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Debtors' opening Memorandum of Law in Support of the Motion to Dismiss.

(II) granting, as modified at the request of the Arahova Noteholders Committee, its motion to disqualify WF&G from "representing or acting for or against any Debtor in the Interdebtor Disputes."

## ARGUMENT

I. THE DISQUALIFICATION ORDER GRANTED THE RELIEF SOUGHT BY THE ARAHOVA NOTEHOLDERS COMMITTEE SO IT IS NOT AGGRIEVED.

The Debtors' Opening Brief demonstrated that the Bankruptcy Court found that the Arahova Noteholders Committee "narrowed its request" from its original, "broader" motion, and "by the time of summation sought to disqualify WF&G only in the Interdebtor Disputes." (Bankr. Ct. Op. at 5, n.1.) The Arahova Noteholders Committee does not dispute that this was the Bankruptcy Court's finding.

The Committee likewise concedes that if the Bankruptcy Court granted the relief the Committee requested, then it cannot claim to be aggrieved by the Disqualification Order. See, e.g., Forney v. Apfel, 524 U.S. 266, 271 (1998) ("this Court has held that a 'party who receives all that he has sought generally is not aggrieved by the judgment affording the relief and cannot appeal from it.'") (quoting Deposit Guaranty Nat. Bank v. Roper, 445 U.S. 326, 333 (1980)).

The Arahova Noteholders Committee also does not dispute that during summation its counsel expressly narrowed the relief that the Committee had originally requested. That is, the Committee does not deny that its counsel stated that WF&G could "continue advising regarding issues that are not the subject matter of the conflict" and could continue representing Arahova and other Debtors on issues that do not "relate to the intercompany disputes." (Jan. 6, 2006 Hr'g Tr. at 3.78:24-3.79:10.) Now, backtracking on its own strategic election, the

Committee says that the Bankruptcy Court correctly heard its words, but misunderstood them by taking them "out of context."

Review of the record proves otherwise. The Committee demanded "unconflicted counsel," its argument runs, on the issue of substantive consolidation. But the issue of substantive consolidation was not before the Bankruptcy Court, which properly found that this "apparent additional" request was not "adequately briefed" nor was it "ripe for decision." (Bankr. Ct. Op. at 102, n.164.) The Bankruptcy Court explained that the "substantive consolidation proposal may change, and it may be that litigants in the Motion in Aid may not care about substantive consolidation, or may care only in the event of certain outcomes in the Motion in Aid." (Id.) The Bankruptcy Court observed that certain issues would need to be addressed if the Arahova Noteholders Committee further pursued its request at the appropriate time. One such issue was "the extent to which [d]ebtors' counsel have or have not ever been disqualified from litigating the desirability of substantive consolidation (at confirmation or otherwise) by reason of asserted conflicts." (Id.) The Bankruptcy Court was "unaware of any instance in which counsel for a debtor proponent of a plan has been disqualified, as an ethical matter, from proposing substantive consolidation of the debtors in a multi-debtor case." (Id.) As such, the Bankruptcy Court denied (without prejudice) the additional request of the Arahova Noteholders Committee for disqualification of WF&G as to substantive consolidation issues.

The Arahova Noteholders Committee now attempts to conflate what the Bankruptcy Court properly said about the unripe issue of substantive consolidation with the question whether the Committee agreed that WF&G could continue to represent Arahova on issues where there was no adversity to Arahova. The Arahova Noteholders Committee cannot

rely upon its request during summation for separate substantive consolidation counsel to support its argument that, despite what it actually said, it never narrowed its Disqualification Motion.

The Arahova Noteholders Committee also argues that it is aggrieved by the requirement in the Disqualification Order that WF&G remain neutral in the intercreditor disputes. It is not. By stepping aside, the Debtors and WF&G have enabled advocates for the creditors, particularly the Arahova Noteholders Committee and its counsel, to vigorously represent their clients' interests through the Resolution Process. The Bankruptcy Court agreed: "The Resolution Process . . . provides the Arahova Noteholders with a full opportunity to litigate the Intercreditor Disputes." (Bankr. Ct. Op. at 37.) As such, WF&G's neutrality has not aggrieved the Arahova Noteholders Committee.

Even where a conflict exists, bankruptcy courts have the discretion to fashion relief appropriate to the circumstances to ensure that the conflict is obviated and all interested parties have a full opportunity to litigate their positions. See Kittay v. Kornstein, 230 F.3d 531 (2d Cir. 2000) (allowing attorney who represented parties with conflicting interests to continue his representation where the bankruptcy court had fashioned a remedy whereby any money recovered in the litigation would be placed in escrow and then allocated to the parties by the bankruptcy court). This is precisely what the Bankruptcy Court has done through the creation and implementation of the Resolution Process.

Despite the Arahova Noteholders Committee's general assertions to the contrary, the evidence proved, and the Bankruptcy Court found, that WF&G's actions have been neutral:

> At all relevant times, the Debtors and their counsel [WF&G] maintained neutrality in the Interdebtor Disputes. The Debtors' decision to maintain neutrality and to refrain from taking sides as an advocate for or against the Arahova Noteholders of any of the Debtors (including, most significantly, Adelphia Parent) was sensible and taken in good faith.

(Bankr. Ct. Op. at 73.) Since the Disqualification Order was entered, WF&G has continued to act neutrally in its representation of the Debtors in the intercreditor disputes, specifically in the Motion in Aid.[2] WF&G affirmatively sought the Bankruptcy Court's guidance as to how to prepare the Debtors' witnesses for the Motion in Aid hearings. The Bankruptcy Court established procedures for preparing the Debtors' witnesses that would ensure WF&G's continued neutrality. (See Letter from Daniel N. Zinman to the Honorable Robert E. Gerber dated Feb. 1, 2006, attached hereto at Ex. 1.) WF&G has fully complied with these procedures.

The Arahova Noteholders Committee makes much of certain comments made by the Bankruptcy Court one week after the date of the Disqualification Order. These comments did not in any way alter that Order nor the Bankruptcy Court's Opinion.

Finally, the Arahova Noteholders Committee's reliance upon In re Granite Partners, L.P., 219 B.R. 22, 36 (Bankr. S.D.N.Y. 1998), should be seen for what it is: an attempt to save its appeal by smearing WF&G. Granite Partners did not address the issue of counsel representing multiple affiliated debtors and is thus readily distinguishable.

II.     THE EXCLUSIVITY ORDER IS NOT A FINAL ORDER.

    A.     This Court Lacks Subject Matter Jurisdiction To Hear The Appeal Of The Exclusivity Order.

The Debtors' Opening Brief demonstrated that the text of 28 U.S.C. section 158(a)(2) does not give this Court jurisdiction to hear the appeal of the Exclusivity Order. The Arahova Noteholders Committee does not dispute this. Instead, the Committee asks this Court to disregard the statute's language, claiming that it is the result of "particularly poor drafting," that

---

[2]   The Debtors continue to object to the citation of matters that arose after the completion of the evidentiary hearing and the Bankruptcy Court's decision. Notwithstanding this objection, Debtors include this citation in order to correct mischaracterizations made by the Arahova Noteholders Committee in their Response to the Debtors' Motion to Dismiss. See Response at p. 6-7.

accepting the statutory language as the law would "elevate form over substance," and that a bankruptcy court's denial of a motion to terminate exclusivity "effectively extend[s] the Debtors' exclusive period."

The Arahova Noteholders Committee has provided no precedent to support what it has requested of this Court. Nor has the Arahova Noteholders Committee disputed the fact, stated in our Opening Brief, that the one court that has construed section 158(a)(2) has stressed the need for strict construction. See Mid-Continent Racing & Gaming Co. I v. Sunflower Racing, Inc. (In re Sunflower Racing, Inc.), 218 B.R. 972, 976 (D. Kan. 1998) ("...we are mindful that there is a general presumption against federal jurisdiction. Statutes authorizing appeals are to be strictly construed. Jurisdictional statutes are to be construed with precision and with fidelity to the terms by which Congress has expressed its wishes.") (internal quotations and citations omitted).

Apparently recognizing that its argument has no merit, the Arahova Noteholders Committee asks this Court to exercise its discretion under section 158(a)(3) to hear an appeal of the Exclusivity Order. The first problem with this argument is that the Arahova Noteholders Committee has never sought leave of this Court to hear an appeal of that interlocutory order. Nor has it attempted to satisfy its burden of showing that leave would be justified. It has not shown that the Exclusivity Order "'(1) involve[s] a controlling question of law (2) over which there is substantial ground for difference of opinion,' and . . . that '(3) an immediate appeal would materially advance the ultimate termination of the litigation.'" In re Adelphia Commc'ns Corp., 333 B.R. 649, 658 (S.D.N.Y. 2005) (quoting 28 U.S.C. § 1292(b)).

The second problem is that the Arahova Noteholders Committee has not demonstrated that "exceptional circumstances" exist to justify leave to appeal. Id. (citations

omitted). As was the case previously when it sought leave to appeal, "affirmance of the [Exclusivity Order] would not advance the proceedings. Reversal could vastly complicate the proceedings . . ." Moreover, given the on-going Motion in Aid proceedings, "[i]t is uncertain that an appellate court would ever need to address these issues, in which case an interlocutory appeal now would be a waste of judicial resources." Id. at 663 (citation omitted).

      B.      The Debtors Could Not And Did Not Waive Their Argument That This Court Lacks Subject Matter Jurisdiction To Hear The Appeal Of The Exclusivity Order.

In a last-ditch attempt to salvage its appeal of the Exclusivity Order, the Arahova Noteholders Committee makes a preposterous waiver argument that ignores black letter law and the prevailing customs of motion practice. The Debtors maintain that this Court lacks jurisdiction under section 158 to hear the Exclusivity Order. The defense of lack of subject matter jurisdiction can be made at any time and could not have been waived by the Debtors. Fed. R. Civ. P. 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.")

Even if waiver was a possibility, the Debtors did not need to "press" their jurisdiction argument at the hearing, on January 30, 2006 before this Court, in order to preserve it. Not surprisingly, the Arahova Noteholders Committee offer no authority for its position, because, in fact, it is common practice to not raise every issue at a hearing that a party includes in its submissions to the court. The Arahova Noteholders Committee's position, if imposed, would significantly change the way motion practice is conducted and be a dreadful waste of the courts' time.

3168097.1

## CONCLUSION

The Debtors respectfully request that the Court dismiss the Arahova Noteholders Committee's Appeals of the Disqualification and Exclusivity Orders.

Dated: New York, New York
       March 2, 2006

                                  Respectfully submitted,

                                  WILLKIE FARR & GALLAGHER LLP

By: _____
      Roger Netzer (RN-7190)

                                  787 Seventh Avenue
                                  New York, New York 10019
                                  (212) 728-8000 (Phone)
                                  (212) 728-8111 (Fax)