UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
                                              :     **MEMORANDUM**
In re: **ADELPHIA**                           :     **OPINION AND**
**COMMUNICATIONS CORP., et al.,**             :     **ORDER**
                                              :
                    Debtors.                  :     06 Civ. 1445 (SAS)
                                              :
------------------------------------------------------X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

I.  **INTRODUCTION**

        This appeal arises out of interdebtor and intercreditor disputes in the jointly administered bankruptcy proceedings of Adelphia Communications Corp. ("ACC") and 230 of its direct and indirect subsidiaries (collectively "Debtors"), including Arahova Communications, Inc. and its direct and indirect subsidiaries (collectively "Arahova Debtors").[1] The Debtors' cases are pending before the United States Bankruptcy Court for the Southern District of New York (Robert J. Gerber, Judge). All of the Debtors are represented by Willkie Farr & Gallagher LLP ("Willkie") and share certain management professionals.

        One creditor group, the Ad Hoc Committee of Arahova Noteholders ("Arahova Committee") appeals the following orders of the Bankruptcy Court

---

    [1]    The Bankruptcy Court and the parties characterize these disputes as interdebtor, intercompany, and intercreditor. The resolution of claims among individual debtors determines respective creditor recoveries.

1

issued on January 23, 2006:

> (1) the order granting in part and denying in part the Arahova Committee's motion to disqualify Willkie from representing the Arahova Debtors on all interdebtor disputes (the "Disqualification Motion");
>
> (2) the order denying the Arahova Committee's motion to appoint a trustee for the Arahova Debtors and certain other Debtors, or in the alternative, to require the management of the Arahova Debtors to appoint independent officers and directors and retain unconflicted counsel to represent the Arahova Debtors on all interdebtor issues (the "Trustee Motion"); and
>
> (3) the order denying the Arahova Committee's motion to terminate the exclusive period during which the Arahova Debtors may file a chapter 11 plan and disclosure statement and solicit acceptances thereof (the "Exclusivity Motion").

The Arahova Committee argues that the Bankruptcy Code requires that each affiliated debtor in a multidebtor bankruptcy be armed with an "independent" counsel and fiduciary who will "take affirmative steps to ensure that its estate's parochial interests are guarded, even at the expense of its affiliates."[2] In a lengthy and thorough opinion (the "Bankruptcy Court Opinion"), the Bankruptcy Court found that such an absolute rule would "represent a sea change in the law and in chapter 11 practice, with a highly destructive effect on the manner in which

---

[2] Opening Brief of Appellant, the Ad Hoc Committee of Arahova Noteholders ("Arahova Mem.") ¶¶ 25, 44.

2

multi-debtor chapter 11 cases are run. As importantly or more so, any such rule would in nearly all, if not all, such cases have a material adverse effect on creditor recoveries."[3] I affirm, largely because I see no reason to disturb the Bankruptcy Court's factual findings that *first*, the Debtors' professionals have maintained a level playing field and *second*, the relief requested by the Arahova Committee would make matters worse for all Debtors, including the Arahova Debtors. I assume the parties' familiarity with the facts and procedural history, which are fully set forth in the Bankruptcy Court Opinion, and which I reference only as necessary to explain my decision.

## II. JURISDICTION

This Court has previously held that orders granting or denying appointment or disqualification of a trustee or other estate professionals in a bankruptcy case are final and therefore appealable as of right under section 158(a)(1) of the Bankruptcy Code.[4]

---

[3] *In re Adelphia Commc'ns Corp.*, 336 B.R. 610, 619 (Bankr. S.D.N.Y. 2005) (*"In re Adelphia III"*). The Bankruptcy Court analyzed in detail the treatment of intercreditor issues in sixteen recent large multi-debtor cases in this and other districts, and concluded that while interdebtor disputes are common, no Court had adopted this absolute principle. *See id.* at 649-53.

[4] *See In re Adelphia Commc'ns Corp.*, 333 B.R. 649, 660 (S.D.N.Y. 2005) (*"In re Adelphia II"*) (citing 11 U.S.C. § 158(a)(1); *In re Kurtzman*, 194 F.3d 54, 57 n.1 (2d Cir. 1999); *Bank Brussels Lambert v. Coan (In re AroChem*

3

The Debtors argue that this Court lacks jurisdiction to review the denial of the Exclusivity Motion. Section 158(a)(2) of the Bankruptcy Code allows appeals as of right of an order "issued under section 1121(d) of title 11 increasing or reducing" a debtor's exclusive time period in which to file a plan of reorganization. The Debtors argue that the issue is not appealable because the Bankruptcy Court Opinion did not "increase" the exclusive period — rather, it denied the Arahova Committee's motion to reduce the exclusive period. In support of their argument, the Debtors cite Collier on Bankruptcy's comment that section 158(a)(2) "is an example of particularly poor drafting" because if "read literally, neither an order simply refusing to extend exclusivity nor an order simply refusing to terminate exclusivity would be appealable as of right."[5] The Debtors argue for this "literal" reading of the statute, despite Collier's comment that "such

---

*Corp.),* 176 F.3d 610, 620 n.6 (2d Cir. 1999); and *United States Trustee v. Bloom (In re Palm Coast, Matanza Shores Ltd.),* 101 F.3d 253, 256 (2d Cir. 1996)).

[5] In support of their argument, the Debtors cite Collier on Bankruptcy's comment that section 158(a)(2) "'is an example of particularly poor drafting'" because if "'read literally, neither an order simply refusing to extend exclusivity nor an order simply refusing to terminate exclusivity would be appealable as of right.'" Debtors' Memorandum of Law in Support of Its Motion to Dismiss the Arahova Noteholders' Appeals ("Debtors' Motion to Dismiss Mem.") at 8 (quoting 1 Collier on Bankruptcy § 5.02[2] 3 (15th ed. 2005)).

4

a result would be incorrect" given Congress's intent to prevent undue extensions of exclusivity.[6]

The Debtors ignore that the Bankruptcy Court's order was expressly issued under "section 1121(d) of the Code" and holds that the facts "favor the continuation of exclusivity."[7] This holding is indistinguisable from an order "increasing" the Debtors' periods of exclusivity.[8] Therefore, the Debtors' motion to dismiss the appeal of the order denying the Exclusivity Motion is denied.

## III. STANDARD OF REVIEW

---

[6] *See* 1 Collier on Bankruptcy § 5.02[2] 3 (citing 140 Cong. Rec. H10,764 (daily ed. Oct. 4, 1994)). The Debtors argue that their interpretation of the statute prevents a party from "wait[ing] until a strategically convenient time to challenge an already-determined period of exclusivity." Debtors' Motion to Dismiss Mem. at 9. The Debtors' interpretation eviscerates the statutory purpose where, as here, a Bankrutpcy Court order extends exclusivity indefinitely.

[7] *In re Adelphia III*, 336 B.R. at 674-75. One district court has held that section 158(a)(2) did not grant jurisdiction over an appeal of an order denying a creditor group's motion to disseminate a competing plan, despite the fact that this order was a "de facto" extension of the debtor's exclusivity. *See Mid-Continent Racing & Gaming Co. v. Sunflower Racing, Inc. (In re Sunflower Racing, Inc.)*, 218 B.R. 972, 976 (D. Kan. 1998). But there, the decision turned on the fact that the bankruptcy court's order was not issued under section 1121(d) of the Bankruptcy Code, and "specifically left open the possibility that the Creditor Group's plan may be disseminated at a later date." *Id.* at 976-77.

[8] 11 U.S.C. § 158(a)(2).

5

A district court hearing an appeal from a bankruptcy court reviews that court's findings of fact under a "clearly erroneous" standard and its conclusions of law *de novo*.[9] "Matters left to the court's discretion are reviewed for abuse of discretion."[10] The parties agree that a bankruptcy court's determinations of whether to appoint a trustee[11] or to extend plan exclusivity[12] are reviewed under an abuse of discretion standard.

## IV. DISCUSSION

### A. The Disqualification Motion

The Arahova Committee originally requested an order disqualifying Willkie from representing the Arahova Debtors in the Adelphia bankruptcy cases in any way. But at the hearing on its motions before the Bankruptcy Court, the Arahova Committee narrowed the relief it requested to disqualification of Willkie

---

[9] *See* Fed. R. Bankr. P. 8013; *In re Enron Corp.*, 419 F.3d 115, 124 (2d Cir. 2005).

[10] *In re Hirsch*, Nos. 05 Civ. 1454, 05 Civ. 2266, 2006 WL 618222, at *4 (E.D.N.Y. Mar. 10, 2006) (citing *DG Creditor Corp. v. Dabah ( In re DG Acquisition Corp.)*, 151 F.3d 75, 79 (2d Cir. 1998)).

[11] *See In re G-I Holdings, Inc.*, 385 F.3d 313, 321 (3rd Cir. 2004) (Alito, J.); *Dalkon Shield Claimants v. A.H. Robins Co., Inc.*, 828 F.2d 239, 242 (4th Cir. 1987).

[12] *See In re Hoffinger Indus., Inc.*, 292 B.R. 639, 642 (8th Cir. BAP 2003).

6

only "'on the issues . . . that relate to the intercompany disputes.'"[13] The Bankruptcy Court partially granted this request as a "prophylactic" measure, finding that although the Debtors' professionals had not yet acted adversely to the interests of any Debtor's estate or creditor, they must maintain their "neutrality" in the interdebtor disputes.[14] The Bankruptcy Court clarified that the Debtors' professionals could continue to provide information and attempt to facilitate settlement of the interdebtor and intercreditor disputes without publicly acting as an advocate for any Debtor.[15] The Arahova Committee appeals the Bankruptcy Court's disqualification motion on the ground that the Bankruptcy Court erred as a matter of law by failing to bar the Debtors' professionals from any participation in the interdebtor disputes.[16]

---

[13] *In re Adelphia III*, 336 B.R. at 616 n.1 (quoting 1/6/06 Tr. of Hearing before the Hon. Robert E. Gerber ("1/6/06 Tr.") at 76).

[14] *Id.* at 620 & n.163. The interdebtor issues in this case include, but are not limited to, allocation of the proceeds of the Debtors' asset sale, allocation of settlement expenses, intercompany liabilities, and intercompany avoidable transfers. *See id.* at 616, 676.

[15] *See id.* at 641.

[16] The Debtors move to dismiss this portion of the appeal on the ground that the Arahova Committee lacks standing. The Debtors argue that the Arahova Committee is not aggrieved by the Bankruptcy Court's order because the Bankruptcy Court granted the Arahova Committee's motion. But the Arahova Committee sought *full* disqualification of Willkie from any participation in the

7

Pursuant to section 327(a) of the Bankruptcy Code, professionals hired on behalf of a debtor's estate may not represent an interest adverse to the estate.[17] The Second Circuit has held that section 327 does not dictate any "per se ban" or "general rule of simple application," but rather, requires a "fact-specific" inquiry into the "parties' interests and their alignments."[18] "The naked existence of a potential for conflict of interest does not render the appointment of counsel nugatory, but makes it voidable as the facts may warrant. It is for the court to decide whether the attorney's proposed interest carries with it a sufficient threat of material adversity to warrant prophylactic action."[19]

New York state disciplinary rules also provide that counsel may not "continue multiple employment" if it is likely to "adversely affect" his or her

---

intercompany disputes. *See* 1/6/06 Tr. at 79. The Arahova Committee is aggrieved by the Bankruptcy Court Opinion because it allows Willkie to continue to participate in those disputes by providing information and attempting to facilitate settlements without publicly acting as an advocate for any Debtor. The Debtors' motion to dismiss the appeal of the Disqualification Motion is accordingly denied.

[17] *See* 11 U.S.C. § 327.

[18] *In re AroChem Corp.*, 176 F.3d at 627 (citation omitted).

[19] *Id.* at 628 (quotation marks omitted). *Accord In re Angelika Films 57th, Inc.*, 227 B.R. 29, 39-40 (Bankr. S.D.N.Y. 1998) (citing *Kravit, Gass & Weber v. Michel (In re Crivello)*, 134 F.3d 831, 838 (7th Cir. 1998)) (because "bankruptcy courts are courts of equity. . . . [i]t is conceivable that even an interested professional may provide services which are beneficial to the estate.").

8

"professional judgment on behalf of a client."[20] But state disciplinary rules "merely provide general guidance and not every violation of a disciplinary rule will necessarily lead to disqualification."[21]

The Bankruptcy Court found that the Debtors' professionals maintained neutrality and did not represent ACC or any other debtor in a way that was "adverse" to the Arahova Debtors.[22] The Arahova Committee disputes this factual finding, arguing that the Debtors' professionals took a series of actions while "wearing their ACC hats."[23] The Debtors' professionals have taken many actions which the Arahova Committee opposes, but this does not demonstrate that they favored the ACC parent debtors over the Arahova Debtors.[24] Assessing all of the Debtors' professionals' actions over the three and a half years during which he

---

[20]  22 N.Y. Comp. Codes R. & Regs. § 1200.24(b) (2005).

[21]  *Hempstead Video, Inc. v. Incorporated Village of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) (citation omitted).

[22]  *In re Adelphia III*, 336 B.R. at 618.

[23]  Arahova Mem. ¶ 31.

[24]  The Arahova Committee argues that Willkie has favored the ACC Debtors since the date of the Bankruptcy Court's order, "actively representing ACC employees in depositions" and unfairly asserting the attorney-client privilege. *Id.* ¶ 55. These issues, which pertain to the Bankruptcy Court's enforcement of its order of disqualification, are not properly before this Court on appeal.

9

presided over these cases, Judge Gerber determined that they "had never acted adversely to the interests of any individual debtor."[25] The Bankruptcy Court's findings on this question are "entitled to deference because a bankruptcy judge is on the front line, in the best position to gauge the ongoing interplay of factors and to make the delicate judgment calls which such a decision entails."[26]

The Arahova Committee argues that the "plain meaning" of section 327 establishes a per se rule that estate professionals who represent multiple debtors cannot in any way participate in interdebtor disputes.[27] But as the Bankruptcy Court correctly noted, "the presence of intercompany claims between debtors represented by the same counsel does not automatically warrant the disqualification of that counsel."[28] Due to "the substantial cost of requiring

---

[25] *In re Adelphia III*, 336 B.R. at 618, 620.

[26] *Kittay v. Kornstein*, 230 F.3d 531 (2d Cir. 2000) (quoting *In re AroChem Corp.*, 176 F.3d at 628).

[27] Arahova Mem. ¶¶ 40-41.

[28] *In re Adelphia III*, 336 B.R. at 672-73 (citing *In re Int'l Oil Co.*, 427 F.2d 186, 187 (2d Cir. 1970); *Katz v. Kilsheimer*, 327 F.2d 633, 635 (2d Cir. 1964) (Friendly, J.); *In re Mulberry Phosphates, Inc.*, 142 B.R. 997, 998 (Bankr. M.D. Fla. 1992); *In re Guy Apple Masonry Contractor*, 45 B.R. 160, 166 (Bankr. D. Ariz. 1984); *Hassett v. McColley (In re O.P.M. Leasing Serv.)*, 16 B.R. 932 (Bankr. S.D.N.Y. 1982); 3 Collier on Bankruptcy § 327.04[5][a] ("The case law suggests that, rather than disapproving of multi-debtor representation as a per se conflict, courts generally examine the factual circumstances surrounding the

10

additional trustees or counsel in cases where individual debtors have claims against each other," courts "have taken a 'wait and see,' fact-driven, approach, to determine the extent to which [additional professionals are] necessary."[29] The Arahova Committee conceded as much when it narrowed the relief it requested in the Bankruptcy Court from disqualification of Willkie *en toto* to disqualification only with regard to the interdebtor disputes. Interdebtor issues arise in most large multidebtor bankruptcy cases.[30] Requiring appointment of independent professionals to represent each individual debtor in all such cases, regardless of the factual circumstances, would burden estates with unjustified and insurmountable costs.[31]

### B. The Trustee Motion

#### 1. Appointment for Cause Under Section 1104(a)(1)

The Bankruptcy Court denied the Arahova Committee's motion for appointment of a trustee for the Arahova Debtors under section 1104(a) of the

---

representation to determine whether it is appropriate.")).

[29] *Id.* (citing *Katz*, 327 F.2d at 635-36; *In re O.P.M. Leasing Serv.*, 16 B.R. at 939; and *In re Guy Apple Masonry Contractor*, 45 B.R. at 166).

[30] *See In re Mulberry Phosphates, Inc.*, 142 B.R. at 998.

[31] *See In re Int'l Oil Co.*, 427 F.2d at 187; *Katz*, 327 F.2d at 635; *In re Mulberry Phosphates, Inc.*, 142 B.R. at 998; *In re Guy Apple Masonry Contractor*, 45 B.R. at 166.

11

Bankruptcy Code. The Arahova Committee does not dispute the Bankruptcy Court's legal conclusion that section 1104(a)(1), which allows appointment of a trustee "'for cause,'" requires a showing of fraud, dishonesty, incompetence, gross mismanagement, or similar misconduct by the debtor-in-possession.[32] Nor does the Arahova Committee dispute the Bankruptcy Court's conclusion that "there is no basis for any finding of misconduct or lack of managerial skill" by the Debtors.[33]

Nonetheless, the Arahova Committee argues that cause exists for appointment of a trustee because the Debtors have failed to litigate "billions of dollars" of interdebtor claims on behalf of the Arahova Debtors.[34] The Arahova Committee argues that the Arahova Debtors have a fiduciary duty under the Bankruptcy Code and Delaware law to maximize the value of the Arahova estate by pursuing claims in the interdebtor duties.[35] However, a debtor in possession's

---

[32] *In re Adelphia III*, 336 B.R. at 656 (quoting 11 U.S.C. § 1104(a)(1)).

[33] *Id.* at 657.

[34] Reply Brief of Appellant, the Ad Hoc Committee of Arahova Noteholders ("Arahova Reply Mem.") at 17.

[35] *See id.* The Arahova Committee points to the fact that the Arahova Debtors did not hold board meetings, while the ACC board and its management team met frequently. *See id.* But, as the Debtors argue, "a subsidiary board is under no obligation to hold separate meetings but, consistent with its duties, may act by written consent." Brief of Appellees the Adelphia Debtors ("Debtors

duty to protect the property of its estate does not require overzealous pursuit of every claim, fraudulent conveyance, or avoidance action. The debtor in possession may refuse to pursue claims if it concludes that the action will not benefit the estate.[36] Debtors may lack the means to prosecute claims, or have countervailing commercial concerns or contractual obligations.[37] In such circumstances, and where it is in the best interests of the estate, a Bankruptcy Court may authorize debtors to step aside and allow creditors to sue on behalf of the estate.[38] Although the Bankruptcy Code "contains no explicit authority for creditors' committees to initiate adversary proceedings," the practice is well established in this Circuit.[39]

---

Mem.") at 16 (citing 8 Del. Code Ann. § 141(f)).

[36] *See In re Adelphia Commc'ns Corp.*, 330 B.R. 364, 373 (Bankr. S.D.N.Y. 2005) ("*In re Adelphia I*").

[37] *See id.*

[38] *See id.*

[39] *Unsecured Creditors Comm. of Debtor STN Enters. v. Noyes (In re STN Enters.)*, 779 F.2d 901 (2d Cir. 1985). *Accord Glinka v. Murad (In re Housecraft Indus. USA, Inc.)*, 310 F.3d 64, 70 (2d Cir. 2002); *Commodore Int'l Ltd. v. Gould (In re Commodore Int'l Ltd.)*, 262 F.3d 96, 98 (2d Cir. 2001). The Bankruptcy Court denied the Arahova Committee's motion for standing under *In re STN Enterprises*, and this Court denied the Arahova Committee's motion for leave to take an interlocutory appeal, noting that the Arahova Committee may take an appeal at the end of the case. *See In re Adelphia II, 333* B.R. at 665.

13

The Bankruptcy Court found that the Debtors fulfilled their fiduciary duties by allowing creditor groups to litigate the interdebtor disputes on behalf of each Debtor.[40] Under the dispute resolution mechanism proposed by the Debtors and approved by the Bankruptcy Court (the "Resolution Process Order"), the Bankruptcy Court has scheduled hearings on the interdebtor and intercreditor issues, and the Debtors made documents available to creditor groups via a data room and provided witnesses for discovery.[41]

The Arahova Committee argues that it is disadvantaged under the Resolution Procedures Order, because unlike a trustee, it does not have a client with unrestricted access to the documents, first-hand knowledge of facts, and incentive to maximize only the interests of the Arahova Debtors.[42] This argument is academic. The Arahova Committee does not dispute the Bankruptcy Court's conclusion that new professionals "would take many months to acquire a

---

[40] *See In re Adelphia III*, 336 B.R. at 670. The Arahova Committee also argues that the Arahova Debtors cannot appear *pro se* in the interdebtor disputes. *See* Arahova Reply Mem. at 17 (citing *Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 195 (1993)). This argument is semantic: the Debtors do not "appear" in the interdebtor disputes, but rather, maintain a position of neutrality. The Creditor's Committees appear in those disputes to litigate claims on behalf of debtors.

[41] *See In re Adelphia III*, 336 B.R. at 634.

[42] *See* Arahova Mem. ¶ 35.

14

knowledge level that the creditors already have" on the "extraordinarily complex" and "wide range of Adelphia business, operational and legal issues" that must be resolved in a timely a manner.[43] In light of these undisputed facts, the Bankruptcy Court did not abuse its discretion in entering the Resolution Procedures Order to resolve interdebtor disputes.[44]

### 2. Appointment in the Interests of the Estate or Creditors

Under section 1104(a)(2) of the Bankruptcy Code, a Bankruptcy Court may appoint a trustee in the interests of the estate or its creditors. The Arahova Committee does not argue with the Bankruptcy Court's conclusion that this section requires fact-driven assessment of whether appointment of a trustee is in the best interests of creditors. As an alternative to a trustee, the Arahova Committee requested appointment of "nontrustee fiduciaries" to represent the Arahova Debtors under section 105 or 1107 of the Bankruptcy Code.[45] Assuming *arguendo* that it

---

[43] *In re Adelphia III*, 336 B.R. at 640-41.

[44] *See In re Angelika Films 57th, Inc.,* 246 B.R. at 181 (bankruptcy court has "wide discretion in formulating permissible remedies" to conflicts of interest).

[45] *In re Adelphia III*, 336 B.R. at 667. Under section 105, a Bankruptcy Court has discretion to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Section 1107 provides that a debtor in possession is subject to "such limitations or conditions as the court prescribes." *Id.* § 1107(a). The Arahova Committee

15

had discretion to grant such relief, the Bankruptcy Court concluded that appointment of new professionals was not warranted unless "necessary and beneficial to the fair and efficient resolution of the bankruptcy proceedings."[46] This conclusion was not in error.

The Bankruptcy Court reasoned that if a trustee or other fiduciary were appointed for the Arahova Debtors, other creditor groups would make similar demands, resulting in the "[b]alkanization of decisionmaking" for all Debtors, causing inefficiency, costs, error and delay.[47] New professionals would not be able to litigate the interdebtor disputes as well as creditor constituencies.[48] Appointment of a trustee would cause disruption of the Debtors' commercial relationships, including giving Time Warner and Comcast the right to terminate its agreement to

---

argued that appointment of new fiduciaries is required under these sections as a corollary to the Bankruptcy Court's order disqualifying the Debtors' professionals from participation in the interdebtor disputes. *See In re Adelphia III*, 336 B.R. at 667.

[46] *In re Adelphia III*, 336 B.R. at 667-68 ("[A]lthough the words used by the Second Circuit in each of the cases in the *STN* trilogy differed slightly, they shared a common underpinning requiring the bankruptcy court to satisfy itself that the appointment of such an estate representative would be in the best interests of the estate.").

[47] *Id.* at 610.

[48] *See id.* at 640-41.

purchase the Debtors' assets and a $443 million breakup fee.[49] Given the Bankruptcy Court's undisupted factual findings that the Arahova Debtors would be adversely affected by appointment of new professionals, the Bankruptcy Court's denial of the Trustee Motion was not an abuse of discretion.[50]

## C. Exclusivity Motion

Under section 1121(d) of the Bankruptcy Code, the moving party must show "cause" for extending or terminating the debtor's exclusivity. The Bankruptcy Code does not define "cause," but the Bankruptcy Court properly considered factors including whether the debtors had made good faith progress

---

[49] *See id.* at 639.

[50] The Arahova Committee cites *Union Sav. Bank v. Augie/Restivo Baking Co., Ltd. (In re Augie/Restivo Baking Co.)*, 860 F. 2d 515, 520 (2d Cir. 1988) in support of the proposition that a debtor's interests cannot be sacrificed for the "common good" of a group of affiliated debtors. Arahova Reply at 15. But that case held only that a bankruptcy court could not require substantive consolidation of two unrelated companies where it would require the creditor of one company to sacrifice the priority of his claim. *See id.* at 15-16. Setting aside the factual dispute over whether Arahova's interests have been sacrificed for any common good, this case is inapposite because the Arahova Committee does not appeal any order of substantive consolidation which sacrifices the priority of its claims.

17

towards reorganization and whether the extension of exclusivity was sought to pressure creditors to submit to the debtor's reorganization demands.[51]

The Arahova Committee does not take issue with the Bankruptcy Court's finding that "in the face of significant challenges, the Debtors have used the exclusive periods to develop a plan that will result in a sale of the Company that will bring in $17.6 billion in value."[52] The Debtors are not prolonging exclusivity in order to improperly pressure the Arahova Committee in the interdebtor disputes. The plan proposed by the Debtors reserves funds to pay the Arahova Committee's claims in full, with postpetition interest, if the the Arahova Committee should prevail in the interdebtor disputes.[53]

---

[51] *See In re Dow Corning Corp.*, 208 B.R. 661, 664 (Bankr. E.D. Mich. 1997); *In re Express One Int'l, Inc.*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996).

[52] *In re Adelphia III*, 336 B.R. at 675. The Arahova Committee also argues that the Debtors did not seek to obtain the best possible price for the Arahova Debtors in the bidding process that led to the Time/Warner Comcast asset sale. *See* Arahova Reply Mem. at 17. But the Bankruptcy Court did not err in concluding that nothing in the record shows that the Arahova Debtors would recover more value from any alternative to the Time Warner/Comcast sale. *See In re Adelphia III*, 336 B.R. at 631.

[53] *See id.* at 634-35. The Bankruptcy Court properly rejected the Arahova Committee's argument that the Supreme Court's decision in *Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship* requires termination of the Debtors' exclusivity for several reasons, most notably that this is not a case in which "old equity acquire[s] or retain[s] the property interest without paying full value." 526 U.S. 434 (1999).

The Bankruptcy Court did not abuse its discretion in finding that, "[g]iven the lack of meaningful alternatives and the dire consequences associated with imperiling the Plan and [the] sale to Time Warner and Comcast, a balancing test tilts decidedly in favor of continuing exclusivity."[54]

## V. CONCLUSION

I have considered the Arahova Committee's remaining arguments on these issues and found them to be unpersuasive, for the reasons stated in the Bankruptcy Court Opinion. For the foregoing reasons, the judgments of the Bankruptcy Court are affirmed. The Clerk of the Court is directed to close the appeal.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
March 30, 2006

---

[54] *In re Adelphia III*, 336 B.R. at 677.

## - Appearances -

**For the Ad Hoc Committee of Arahova Noteholders:**

J. Christopher Shore, Esq.
Gerard Uzzi, Esq.
Douglas P. Baumstein, Esq.
WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036-2787
(212) 819-8200

**For the Debtors and Debtors-in-Possession:**

Brian E. O'Connor, Esq.
Terence K. McLaughlin, Esq.
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
(212) 728-8000

**For the Official Committee of Equity Security Holders:**

Peter D. Morgenstern, Esq.
Gregory A. Blue, Esq.
Eric B. Fisher, Esq.
Andrew Buck, Esq.
BRAGAR WEXLER EAGEL & MORGENSTERN, P.C.
885 Third Avenue
New York, New York 10022
(212) 308-5858

**For the Ad Hoc Committee of ACC Senior Noteholders:**

Bruce Bennett, Esq.
James O. Johnston, Esq.
HENNIGAN, BENNETT & DORMAN LLP
601 South Figueroa Street, Suite 3300
Los Angeles, California 90017
(213) 694-1200